**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEJESUS COLLINS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ No. DLB-22-1740** |
| **WILLIAM BEEMAN,** *et al.*, | * | |
| **Defendants.** | * | |

**MEMORANDUM**

Plaintiff DeJesus Collins, who is proceeding without counsel, filed suit for damages pursuant to 42 U.S.C. § 1983 against Corizon Health ("Corizon"); William Beeman, Dr. Getachew, Holly Hoover, RN, and Lori Keister, LPN, (collectively the "medical defendants"); Dr. Ryan; and the Department of Public Safety and Correctional Services ("DPSCS").[1]  ECF 1.  Collins alleges that he received inadequate medical treatment following a motor vehicle accident.  *Id.*  The medical defendants and DPSCS each filed a motion to dismiss or alternatively for summary judgment. ECF 11 & 16.  Collins was notified of his right to respond (ECF 12, 17), and was provided additional time to respond (ECF 18, 20, 22), but he has not responded to either motion.  The Court

---

[1] Corizon has filed bankruptcy proceedings in which an automatic stay has been issued.  *See In re Tehum Care Servs., Inc.*, Case No. 23-90086 (CML) (Bankr. S.D. Tex).  Accordingly, the case is stayed as to Corizon and no further proceedings will take place concerning Corizon unless the stay is lifted.  ECF 24.  The medical defendants assert that Corizon is incorrectly named as a defendant because "YesCare Corp. assumed the medical care contract from Corizon on May 4, 2022," which predates the allegations in Collins's complaint.  ECF 11, at 1; *see* ECF 11-4, at 2 ¶ 2 (Getachew decl.).  However, Collins names Corizon Health, not YesCare Corp., as a defendant.  *See* ECF 1. The Court will not substitute a defendant based on the medical defendants' assertion while the case is stayed as to Corizon.

The Clerk is directed to correct the spelling of defendant William Beeman's name on the docket. *See* ECF 11, at 1.

has reviewed the submissions of the parties and finds that no hearing is necessary.  *See* Loc. R.

105.6.  For the reasons stated below, the defendants' motions are granted.

## I.    Background

Collins alleges that he was injured on June 1, 2021, when the Division of Corrections

("DOC") van that he was riding collided with another vehicle.  ECF 1, at 2.  Collins provides

sparse details regarding each defendant's involvement in his subsequent treatment.  He states that

Dr. Getachew did not treat him following the accident, Nurse Holly Hoover took him off his

medication following the accident "to make [him] suffer!," Dr. Ryan failed to provide physical

therapy although it was ordered by a doctor, and Lori Keister failed to provide medical treatment

although she was aware of the accident.  *Id.*[2]  Collins also states that unnamed DPSCS officials

"showed deliberate indifference to [his] serious medical needs!"  *Id.* at 3.  He states that he

experiences ongoing back, neck, and leg pain, "can not get around," and has fallen "over 20x" in

his cell.  *Id.*  He seeks $800,000.00 in damages.  *Id.*

It is undisputed that Collins was involved in a motor vehicle accident on June 1, 2021.

ECF 11-3, at 5, ¶ 5; ECF 11-4, at 3, ¶ 5.  Medical records show that, after the accident, Collins was

taken to Anne Arundel Medical Center.  ECF 13-2, at 5–9.[3]  He complained of "diffuse pain."  *Id.*

at 5.  According to the x-rays, "[n]o evidence of fracture or dislocation [was] seen[,]" but further

evaluation through a computerized tomography ("CT") scan was warranted "due to the limited

visualization of the spine."  *Id.* at 7.  Collins was given a CT scan of his spine without contrast.

---

[2] Collins does not allege what defendant William Beeman did or failed to do.

[3] The medical defendants include extensive medical records with their motion, spanning years before and after the accident at issue in the current complaint.  *See generally* ECF 13, 13-1, 13-2, 13-3, 13-4, 13-5.  These records provide insight into Collins's chronic care issues, including chronic hip pain, and the treatment he has received.  The Court recounts here only those records that are material to Collins's current claims.

*Id.* at 5.   The findings indicated "loss of the normal cervical lordosis[,] however the cervical vertebral bodies are of normal height and alignment" and "[d]isc spaces are well preserved."  *Id.* The exam concluded that there was "no evidence [of] fracture or acute bony injury" and the "discs appear unremarkable."  *Id.*

That night, when Collins returned to North Branch Correctional Institution ("NBCI"), he was seen by William Beeman, RN at 9:00 p.m.  ECF 13, at 43.  Collins informed Beeman that he hurt his neck in a motor vehicle accident earlier that day and provided Beeman with his discharge instructions from Anne Arundel Medical Center.  *Id.*  Beeman observed that Collins appeared alert and oriented, "no acute distress" was noted, and he "appeared well."  *Id.*   Collins "walked back to his cell bent over but on his own with the officers holding his arms not assisting with transfer." *Id.*

Later that evening, at 11:55 p.m., Collins saw Rhonda Cornwell, RN,[4] at the medical department at Western Correctional Institution ("WCI"), which is located directly next to NBCI, for an unscheduled sick call.  *Id.* at 44.  He informed Cornwell that he was involved in a motor vehicle accident earlier that day and complained of neck pain.  *Id.*  Cornwell noted that Collins's breathing was even and unlabored and that, according to the hospital records, he had been given Tylenol and one Tramadol at the hospital.  *Id.*  She asked him to move his head, and he indicated that he could not do so.  *Id.*  Cornwell called Dr. Getachew, who advised that Collins should be returned to NBCI.

Defendant Holly Hoover, RN, saw Collins on a few occasions after the motor vehicle accident.  On June 18, 2021, Hoover ordered labs for Collins.  ECF 11-3, at 11; ECF 13, at 63.  On June 19, 2021, Collins placed a sick call requesting that his Baclofen prescription be renewed, and

---

[4]  Collins does not name Cornwell as a defendant in this matter.

Hoover renewed it.  ECF 11-3, at 11; ECF 13, at 70.  On June 28, 2021, Hoover completed a wellness check because Collins claimed he was unable to move and refused to get out of his bed.  ECF 11-3, at 11; ECF 13, at 67.  Upon arrival, Hoover noted that he was lying comfortably in his bed.  *Id.*  Collins indicated that some medications had run out, and Hoover informed him of the sick call process and renewed certain prescriptions.  *Id.*

In her sworn declaration, Hoover stated that Collins "has a complicated medical history and is a very difficult patient to treat because he exaggerates his symptoms in attempting to manipulate his medical care for secondary gain."  ECF 11-3, at 3, ¶ 5.  Further, "he has a history of manipulating and drug seeking behavior and not taking his medications as prescribed."  *Id.* at 20, ¶ 53.[5]  She further states that she discontinued certain medications for Collins, as he alleges, "but it was because labs showed subtherapeutic values, meaning he was not taking them as prescribed and was diverting them."  *Id.* at 3, ¶ 5.  Additionally, the discontinuation of "his Baclofen, Gabapentin, and Tramadol" occurred "even before the patient's vehicle accident on June 1, 2021, and the medications were restarted later by Dr. Getachew."  *Id.* at 20, ¶ 53.  Hoover maintains that she "never disregarded this patient's medical needs."  *Id.*

Dr. Getachew states that after the motor vehicle accident, all subsequent "x-rays and physical examinations of [Collins's] neck have been normal, and he has not required any treatment for any neck injury."  ECF 11-4, at 3, ¶ 5.  Further, Dr. Getachew states that "[a]lthough [he] was not the patient's primary care provider, [he] provided appropriate treatment each time [he] saw [Collins] for a telemedicine visit."  *Id.*  Medical records reflect that Dr. Getachew was involved in a care team meeting to discuss Collins's medical needs on August 19, 2021.  *Id.* at 4, ¶ 7; ECF 13,

---

[5]  Hoover's declaration provides an extensive review of Collins's medical history, *see* ECF 11-3 at 4-20, not all of which is necessary to recount in full here.  Hoover references substantial portions of Collins's medical records, which were also provided to the Court.  *See* ECF 13, *et seq*.

at 80.  Collins "was well known to the medical team" who met to review his records and discuss his care.  ECF 11-4, at 4, ¶ 7.  Collins "complained of chronic hip pain due to suspected avascular necrosis and requested a wheelchair for long distances."  *Id.*  The team agreed to "[g]enerate consult for orthopedic follow-up to determine if the patient needs surgery" and to "[c]ontinue using wheelchair for long distance until the patient is cleared by general surgeon."  *Id.*

Dr. Getachew next saw Collins on November 19, 2021, via telemedicine, with Dr. Joginder Mehta performing the physical examination of Collins.  *Id.* at 4, ¶ 9.  Collins "complained of chronic neck pain due to the [accident], although he stated he was evaluated in the emergency room and cleared."  *Id.*  At that time, Dr. Mehta noted no inflammation of Collins's neck.  *Id.* at 5, ¶ 10.  Collins "had good upper muscle strength, with no muscle weakness or atrophy."  *Id.*  It was noted that Collins had limited range of motion in his lower extremities and an unsteady gait due to his chronic hip pain, so Dr. Getachew "wrote an order for use of walker in housing unit and an order for use of wheelchair for long distances for 1 year."  *Id.*

Following the accident, Collins did not see Lori Keister until November 19, 2021, when he saw her for a telemedicine visit with Dr. Getachew and with "Dr. Joginder Mehta assisting for a hands-on evaluation."  ECF 11-5, at 3, ¶ 6.  Keister states that, as a licensed practical nurse ("LPN"), her "role typically involves performing physical assessments of patients when they have a chronic care telemedicine visit with Dr. Getachew since he is not present in the room to perform the exam himself.  [She] cannot order or dictate any medical care."  *Id.* at 3, ¶ 6.  She notes that "[t]here was never any indication to [her] that the patient was not receiving medical care for any condition.  He was repeatedly seen by medical for all his issues."  *Id.* at 4, ¶ 7.

## II.     Standard of Review

The defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment.  Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista,*

6

*Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).  When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

The Court notified Collins that he had the right to respond to the defendants' motions, that the motions could be construed as ones for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond.  ECF 12, 17.  Moreover, the defendants' motions, identifying summary judgment as possible relief, provided sufficient notice for Collins to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).  Collins sought and was granted multiple extensions of time to respond to the motion (ECF 18, 20, 21, 22, 23), but he did not do so.  The Court is satisfied that Collins has been advised that the defendants' motions could be treated as one for summary judgment and that he has been given a reasonable opportunity

to present materials in response to the motion.  Thus, the Court will resolve the motions, in part, under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251.  The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404

U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   Discussion

### A.   Inadequate Medical Care

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

Under the Eight Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Any "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia*,

428 U.S. 153, 173 (1976)).  To state a claim for denial of medical care, a plaintiff must demonstrate that the defendant's acts or omissions amounted to deliberate indifference as to the plaintiff's serious medical needs.  *See Estelle*, 429 U.S. at 106.  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need for medical attention, failed to either provide such care or to ensure care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  "A medical condition is shown as objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Formica v. Aylor*, 739 Fed App'x 745, 755 (4th Cir. 2018) (citing *Gayton v. McKoy,* 593 F.3d 610, 620 (7th Cir. 2010)).

As to the defendant's state of mind, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

An official may avoid liability by showing he "responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew about at the time and without

regard to additional actions that could have been taken.  *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000).

### 1.   Holly Hoover, Dr. Getachew, Lori Keister

Collins's claims that Holly Hoover, Dr. Getachew, and Lori Keister failed to provide constitutionally adequate medical care fail.  As a threshold matter, the record reflects that Collins was not suffering from a serious medical need.  Following the motor vehicle accident at issue here, Collins was taken to Anne Arundel Medical Center where he was given x-rays, which determined that "[n]o evidence of fracture or dislocation [was] seen[,]" and a CT scan that demonstrated that there was "no evidence [of] fracture or acute bony injury" and the "discs appear unremarkable." ECF 13-2, at 5–9.  He was given Tylenol for any pain.  Thus, the record clearly reflects that Collins was not suffering from a serious medical need following the accident, and defendants Hoover, Getachew, and Keister, who treated him on June 18, 19, and 28 (Hoover) and November 19 (Getachew and Keister) and discussed his care on August 19 (Getachew) could not have been deliberately indifferent to a serious medical need because such a need did not exist.

Moreover, the record does not reflect deliberate indifference on the part of these defendants.  The record demonstrates that neither Hoover, Getachew, nor Keister saw Collins for treatment during the days immediately after his accident.  When these defendants did see Collins, the record reflects that the treatment rendered was appropriate.  Collins's bald allegations that Dr. Getachew did not give him treatment following the accident, that Hoover took him off his medication following the accident, and that Keister failed to provide medical treatment despite knowing about the accident are refuted by the medical record.  Collins received treatment after the accident and was seen by two additional providers when he returned to the institution.  Hoover explained that she discontinued some of his medications—three before the June 1 accident

occurred—"because labs showed subtherapeutic values, meaning he was not taking them as prescribed and was diverting them."  ECF 11-3, at 3, ¶¶ 5, 14, 53.  Additionally, Dr. Getachew later restarted the medications Hoover discontinued.  *Id.* at 20, ¶ 53.  On this record, the Court cannot find that these defendants acted with the subjective recklessness required to substantiate a deliberate indifference claim.

Reviewing the record in the light most favorable to Collins, the Court finds no evidence that Collins experienced a significant medical need.  Moreover, the undisputed record evidence establishes that Dr. Getachew, Hoover, and Keister treated Collins and did not act with deliberate indifference to his medical needs.  Accordingly, the medical defendants are entitled to summary judgement.

### 2. William Beeman

Although Beeman is named in the caption of the complaint, Collins does not allege his personal involvement in any allegedly inadequate medical treatment.  ECF 1.  The defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.  Beeman may be found liable only if the plaintiff shows he oficial "acted personally in the deprivation of the plaintiff['s] rights."  *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).  Simply put, even liberally construed, the complaint contains no allegations that state a § 1983 claim against Beeman.  Further, the medical records show that Beeman's treatment of Collins following the accident was reasonable and appropriate.  Accordingly, he, too, is entitled to summary judgment.

### 3. Dr. Ryan

It does not appear that Dr. Ryan was ever served in this action, but even if he had been served, Collins does not state a plausible claim against him.  Because Collins is an inmate proceeding *in forma pauperis*, the Court reviews the allegations against Dr. Ryan to assess whether Collins has stated a plausible claim for relief against him.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Collins states only that Dr. Ryan failed to provide him with physical therapy even though it was ordered by a doctor.  These limited allegations do not state a deliberate indifference claim, even construing the complaint liberally.  At most, Collins's allegations against Dr. Ryan amount to mere negligence, which does not rise to the level of deliberate indifference.  *Brice*, 58 F.3d at 105.  As such, Collins has failed to state a claim against Dr. Ryan, and all claims against him are dismissed without prejudice pursuant to 28 U.S.C. § 1915A.

### B. DPSCS

Collins alleges, generally, that unnamed DPSCS officials "showed deliberate indifference to [his] serious medical needs!"  ECF 1, at 3.   First, DPSCS, as state agency, is not a "person" subject to suit under 42 U.S.C. § 1983, and for that reason, Collins's claims against it must be dismissed.  *See* 42 U.S.C. § 1983; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, as a state agency, DPSCS is entitled to immunity.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  In addition to consent, there are two other exceptions to

13

Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law."  *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).  Neither exception applies here.  As such, DPSCS's motion to dismiss is granted, and Collins's claims against DPSCS are dismissed.

## IV.   Conclusion

The medical defendants' motion to dismiss or alternatively for summary judgment, construed as a motion for summary judgment, is granted.  DPSCS's motion, construed as a motion to dismiss, is granted.  The claims against the defendant Dr. Ryan are dismissed pursuant to 28 U.S.C. § 1915A.

A separate Order follows.

September 26, 2023
Date

Deborah L. Boardman
United States District Judge